## Case No. 9,933.

### Ex parte MUNSON.

[3 App. Comm. Pat. 253.]

Circuit Court, District of Columbia. Dec. 12, 1859.

PATENTS—DUTY OF COMMISSIONER IN FURNISHING INFORMATION—TUCKING GAUGE FOR SEWING MACHINES.

[1. Munson's claim for a tucking gauge for sewing machines is anticipated by Nichols patent (No. 11,615) of August 29, 1854, which produces the same effect in substantially the same manner.]

[2. While the law imposes on the commissioner of patents the duty, yet it leaves it to his discretion to determine from the circumstances how often, and to what extent, he shall furnish information and suitable references to an applicant, to aid him in remedying a defective specification, or to assist him in deciding whether he will withdraw or persist in a rejected claim, and no supposed omission in the performance of such duty will furnish cause of appeal to the judge of the circuit court.]

[Appeal by George C. Munson from a decision of commissioner of patents denying him a patent.]

MERRICK, Circuit Judge. In this case, after carefully examining the models, drawings, and specifications, and reading the reasons of appeal, together with the commissioner's response and the written argument of the claimant's attorney, I also interrogated Examiner Baldwin, under oath, in presence of the claimant's counsel, touching the principles of the machine in question. A very great difficulty in the case has been to determine from the specifications what is the precise matter of novelty claimed in the instrument described by the applicant. Upon considering the original specification it would appear that the novelty relied upon consisted in the arrangement of the diagonal ridge, a, fitting into the groove, b, of the clamping surfaces, which occasions the cloth, urged on by the feed motion of the sewing machine, to bear up against the jaws, e, e, of the guide, thereby necessitating its passage under the needle in a line of undeviating parallelism to the outer edge of the guide, and hence sewing the seams of the tucks at a uniform distance from the outer edge of the fabric. The reference given by the office to the "binding folder" of I. B. Nichols, patented Aug. 29th, 1854, is a complete answer to the case in that aspect, the diagonal grooves and sliding or adjustable guide being both found in this reference, as was freely admitted by the counsel on the trial. Hence the amendment of Aug. 24th, 1859, in the specifications, by which, for the first time, the claimant advances as the distinctive feature of his invention that arrangement of the clamping surface by which they not only gripe the cloth at their front or lips where the diagonal ridge and groove are provided, but they also exercise a steady yet yielding hold on the material beyond and in the rear of the ridge and up to and especially at the exterior edge of the cloth in close proximity to the sliding guide, E, by means of which uniform pressure throughout the extent of that portion of cloth embraced by the clamps it is prevented from puckering; which puckering, if it occurred, would choke up the machine and defeat the whole operation when a very thin and flexible fabric is sewed. Upon turning again to the invention of Nichols, it will be discovered to possess this feature also. In his specification he uses these words: "The blade of the upper guide bar, A, is elastic, so that it accommodates itself to any variation in the thickness of the material, and holds it and the binding firmly in position while they are sewed together by the machine." An inspection of the instrument will make this manifest; for unless the binding and the edge of the cloth are pressed smoothly and firmly together by the clamping plates in the rear of the grooved lips, and to such a degree that the onward motion imparted by the feed wheel to the cloth is by that pressure communicated to the binding in contact with it, there is no operative force to carry the binding through the folder, and hence the cloth urged on by itself would be driven away from the binding as it left the guide, instead of being moved along, as it is, in perfect parallelism with, and in contact

with the back part of the binding. In this connection it will be remembered that there is nothing in the structure or operation of Nichols' binding folder to limit its adaptation to fabrics which are rigid or thick, but it will effect the binding of ribbon or braid upon a fabric of silk as well as a worsted band upon a piece of felt; varying of course the size and thickness of the clamps as the size and strength of the needles and thread also would vary with the material used. The contrivance of Nichols has a further arrangement in the barrier which the turned edges of the clamps present against the escape of the binding towards the body of the cloth; but if the operation of the diagonal grooves with thin and flexible materials, as well as with stiff fabrics, be to force them up against the jaws of the guide (and this certainly is the principal feature in both inventions), then the most which can be said of these barriers is that they are useless, and their presence or absence does not vary the operation of the principle of the continuous pressure of the clamp from front to rear. There being then no other difference between the clamp of Munson and that of Nichols, than the little curve at the end of clamp forming this barrier, and the absence of this little curve not even being pointed out, much less relied upon as distinguishing the claim, I have failed to discover in the application any patentable novelty. The views above expressed are further sustained by the sworn explanations of Examiner Baldwin, taken at my instance, as already stated.

Besides the several reasons of appeal, which present substantially the one question of patentable novelty, above described, there are others, the 4th, 5th, and 6th, designed to submit to my consideration certain alleged errors or irregularities in the manner of examining and deciding this case by the office. I have, upon a former appeal (that of Matthew Chambers, in June, 1859), expressed an opinion which must control the present case, to this effect: That while the law imposes on the commissioner the duty, yet it leaves to his discretion to determine from the circumstances how often and to what extent, he shall furnish information and suitable references to an applicant to aid him in remedying a defective specification, or to assist him in deciding whether he will withdraw or persist in a rejected application, and, being a duty resting in sound discretion, that no supposed omission in its performance will furnish cause of appeal to a judge of the circuit court. Now, for the reasons aforesaid, I hereby certify to the Hon. William D. Bishop, commissioner of patents, that having assigned the 1st of December, 1859, for hearing the above-entitled appeal, the applicant was fully heard by his counsel, and the reasons of appeal and the office response to those reasons were duly considered, together with all the papers and proceedings in the cause, and, being of opinion that there is no error in the

decision of the commissioner, his judgment is affirmed, and a patent is refused to the applicant.